# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Nina Y. Wang

Civil Action No. 25-cv-00562-NYW-SBP

NATIONAL CASUALTY COMPANY,

    Plaintiff,

v.

ACE AMERICAN INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY, and
SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION,

    Defendants.

## ORDER ON MOTION TO DISMISS COUNTERCLAIM

This matter comes before the Court on Plaintiff National Casualty Company's Motion to Dismiss Counterclaim Pursuant to FRCP 12(b)(6) or 12(f) ("Motion to Dismiss" or "Motion"). [Doc. 32, filed May 8, 2025]. Plaintiff National Casualty Company ("Plaintiff" or "NCC") brings the Motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). [*Id.* at 1–2]. Defendant Swiss Re Corporate Solutions Capacity Insurance Corporation ("SRCS Capacity") opposed the Motion to Dismiss, [Doc. 33], and NCC replied, [Doc. 34]. The Court finds that oral argument will not materially assist in the disposition of the Motion to Dismiss. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **DENIES** the Motion to Dismiss without prejudice.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint and Jury Demand, [Doc. 1], and SRCS Capacity's Answer and Counterclaim, [Doc. 25], and are taken as true for

the purposes of the instant Motion, *see Mrs. Colo.-Am., Inc. v. Mrs. Colo. U.S. Pageant*, No. 05-cv-02660-MSK-MEH, 2007 WL 496690, at *1 (D. Colo. Feb. 13, 2007). In 2021, a group of individuals who lived in an apartment complex in Denver, Colorado (the "Property") filed a class action suit in Colorado state court ("Underlying Lawsuit")[1] against the Property owners and manager for abusive practices including the failure to maintain the Property in a livable condition. [Doc. 1 at ¶¶ 8–12]. To qualify as a member of the class, an individual must have leased a residence at the Property from October 22, 2018 to June 30, 2022. [*Id.* at ¶¶ 10–11]. The instant litigation is a coverage dispute arising out of the Underlying Lawsuit.

The Parties in this case are all insurers who have, at some point during the October 2018 to June 2022 date range, issued insurance policies to the Property owners and manager. [*Id.* at ¶¶ 13–29]. NCC issued insurance policies to the Property owners between January 2021 and July 2023, with the Property manager also being covered under those policies "by virtue of being the [owners'] real estate manager." [*Id.* at ¶¶ 13–15]. Defendant Ace American Insurance Company ("Ace") issued policies to both the Property owners and manager between January 2018 and 2020. [*Id.* at ¶¶ 16–18]. Defendant Axis Surplus Insurance Company ("Axis," and collectively with SRCS Capacity and Ace, "Defendants") issued policies to both the Property owners and manager between April 2019 and 2022. [*Id.* at ¶¶ 21–23]. And SRCS Capacity issued a policy to the Property manager, with the Property owners qualifying as additional insureds "pursuant to a blanket additional insured endorsement," between April 2018 and April

---

[1] The Underlying Lawsuit filed in Denver District Court was captioned *Smith v. Cardinal Group Management & Advisory, LLC,* Case No. 2021CV33357. [Doc. 1 at ¶ 8].

2019.  [*Id.* at ¶¶ 26–27].

The Underlying Lawsuit was tried to a jury in March of 2025, and the jury returned a verdict in favor of Plaintiffs. [Doc. 32 at 2]. NCC provided a defense to both the Property owners and manager throughout the underlying class action litigation, paying out "substantial amounts in attorneys' fees and costs." [Doc. 1 at ¶¶ 30–31]. NCC tendered the Underlying Lawsuit to all three Defendants, claiming that the allegations in the Underlying Lawsuit trigger a duty to provide a defense, but none of the Defendants accepted the tender or provided their coverage position. [*Id.* at ¶¶ 19–20, 24–25, 28–29]. As a result, NCC was the only insurer who provided a defense in the Underlying Lawsuit.

In February of 2025, NCC brought the instant action, alleging three causes of action against the Defendants: (1) declaratory judgment that (a) NCC's policies are excess and/or pro rata to the policies issued by Defendants, (b) Defendants are obligated to fully defend and/or share in the defense in the Underlying Lawsuit, and (c) NCC is entitled to reimbursement from Defendants for their share of the defenses costs; (2) breach of contract, on the grounds that Defendants are obligated to defend and/or share in the defense in the Underlying Lawsuit but they have not done so; and (3) equitable contribution and/or subrogation, requesting contribution and/or subrogation from Defendants for the fees and costs incurred in defending the Underlying Lawsuit. [*Id.* at ¶¶ 34–45]. In its declaratory judgment cause of action, NCC seeks "an interpretation of the rights, legal status and relationship of the parties." [*Id.* at ¶ 36].

SRCS Capacity answered the Complaint, alleged ten affirmative defenses including failure to state a claim and no coverage, and brought a two-count Counterclaim for declaratory relief. [Doc. 25]. In its Counterclaim, SRCS Capacity alleges that NCC is

3

not entitled to the relief that it seeks from SRCS Capacity because the Property owners do not qualify as insureds under the SRCS Capacity policy and NCC's duty to defend the Property manager is "primary and non-contributory to any defense obligation that may or may not arise under the SRCS Capacity policy." [*Id.* at 12 ¶ 1]. SRCS Capacity therefore requests that the Court declare that (1) SRCS Capacity does not owe any duty to defend or indemnify the Property owners in the Underlying Lawsuit ("Count I of the Counterclaim"), and (2) any defense obligation that may arise under the SRCS Capacity Policy with respect to the Property manager is excess to the duty to defend owed by NCC ("Count II of the Counterclaim"). [*Id.* at 22–24 ¶¶ 47, 56]. In addition to the requests for declaratory judgment, SRCS Capacity included a factual background in its Counterclaim, citing among other things the policies at issue and communications between the Parties regarding coverage.[2] *See* [*id.* at 12–21 ¶¶ 2–38].

NCC now brings the instant Motion, requesting that the Court "exercise its discretion under the Declaratory Judgment Act" to dismiss or strike SRCS Capacity's Counterclaim because it is redundant to NCC's Complaint and does not add anything to SRCS Capacity's already-asserted defenses and denials. [Doc. 32].

## LEGAL STANDARD

**I.    Rule 12(b)(6)**

A motion to dismiss a counterclaim for failure to state a claim is evaluated under the same standard as a motion to dismiss a complaint pursuant to Rule 12(b)(6). *Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan*, No. 22-cv-00581-

---

[2] Axis and Ace each filed Answers to the Complaint, but neither filed a counterclaim. *See* [Doc. 13; Doc. 28]. Nor did either seek to join SRCS Capacity's Counterclaim against NCC.

4

CNS-NRN, 2023 WL 355942, at *1 (D. Colo. Jan. 23, 2023).  Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted), and the burden is on the plaintiff to frame its complaint accordingly, *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (1955)).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"[F]ederal courts have dismissed claims pursuant to [Rule 12(b)(6)] when those claims are duplicative of other claims in the suit." *Doe through Doe v. Brighton Sch. Dist. 27J*, 612 F. Supp. 3d 1205, 1218 (D. Colo. 2020) (quotation omitted).  Indeed, "[d]istrict courts have discretion to dismiss duplicative claims unless they address two separate wrongs." *Id.* at 1219 (quotation omitted).  However, granting a motion to dismiss "is a harsh remedy which must be cautiously studied." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

5

and that a recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal quotation omitted)).

## II.     Rule 12(f)

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997).  However, striking allegations or dismissing pleadings pursuant to Rule 12(f) is "a generally-disfavored, drastic remedy," and "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike."  *Id.*; *see also Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Colo. 2000) ("The courts in this district require a showing of prejudice before striking an allegation.").  "The burden of proof is a heavy one." *Holzberlein v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB-BNB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).  Ultimately, the Court has discretion whether to grant or deny the motion.  *Skratch Labs LLC v. Delivery Native, Inc.*, No. 20-cv-01565-WJM-STV, 2021 WL 1406021, at *2 (D. Colo. Apr. 14, 2021).

## III.    Declaratory Judgment

The Declaratory Judgment Act grants courts the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also* Fed. R. Civ. P. 57 ("These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C.

6

§ 2201."). "[T]his text presents two separate hurdles for parties seeking a declaratory judgment to overcome." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, there must be an "actual controversy," which has been "equated to the Constitution's case-or-controversy requirement." *Id.* The question under this requirement "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted).

Second, because the Declaratory Judgment Act "stipulates only that district courts 'may'—not 'must'—make a declaration on the merits of that controversy[,] . . . district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Surefoot*, 531 F.3d at 1240; *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (district courts are "not obliged to entertain every justiciable declaratory claim brought before [them]"). The case-specific factors that courts consider in deciding whether to exercise jurisdiction over a declaratory judgment claim (the "*Mhoon* factors") are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (quotation omitted). "Courts have typically applied [these factors] to decline jurisdiction over declaratory judgment claims where there is parallel litigation in state and federal courts, . . . or where resolution of the declaratory judgment claim would prejudice an insured in an underlying liability action by a third party." *TBL Collectibles,*

7

*Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018). "However, courts in this circuit have also dismissed declaratory judgment claims . . . where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action." *Id.*

## ANALYSIS

NCC argues that SRCS Capacity's Counterclaim for declaratory judgment is "redundant and unnecessary," "nothing more than a rehash of its denials to the material allegations of the Complaint and its affirmative defenses." [Doc. 32 at 4]. It contends that the counterclaim "only breaks down what has already been pled and adds nothing to [SRCS Capacity's] already asserted defenses and denials." [*Id.*]. Accordingly, NCC claims, SRCS Capacity's Counterclaim should be dismissed pursuant to Rule 12(b)(6), as failing to seek relief consistent with the purpose of the Declaratory Judgment Act, and Rule 12(f). [*Id.* at 5–14]. SRCS Capacity responds that its Counterclaim "provides additional factual context and evidentiary support that will expedite the court's adjudication," is not redundant because it "is substantively different than its affirmative defenses," and is not "prejudicial to NCC such that it may be stricken under Rule 12(f)." [Doc. 33 at 2–3]. SRCS Capacity additionally argues that its declaratory judgment Counterclaim is proper, and courts routinely permit similar claims under the Declaratory Judgment Act. [*Id.* at 2].

### I. Rule 12(b)(6)

In NCC's argument that SRCS Capacity's Counterclaim should be dismissed under Rule 12(b)(6), NCC does not contend that the factual allegations in the Counterclaim are legally insufficient to state a claim. Instead, NCC argues that the Court should decline to exercise jurisdiction over the Counterclaim because it fails to seek relief

8

consistent with the purpose of the Declaratory Judgment Act and is redundant to SRCS Capacity's Answer and affirmative defenses. [Doc. 32 at 5–11]. The Court addresses each argument in turn.

### A.     Inconsistency with the Purposes of the Declaratory Judgment Act

NCC first contends, based on the Rutter Group Practice Guide, that an action for declaratory relief can serve five specific purposes: to resolve issues when the other side does not sue, to resolve uncertainty in advance of performance, to prevent avoidable damages without waiting for an adversary to take action, to avoid a multiplicity of actions, and as an effective alternative to injunctive relief. [*Id.* at 5–6]. NCC argues without any support that because none of those purposes apply to SRCS Capacity's Counterclaim, the Counterclaim should be dismissed. [*Id.*].

The Court respectfully disagrees that SRCS Capacity's Counterclaim is inconsistent with the purposes of the Declaratory Judgment Act. It has been long established that "[d]eclaratory judgment actions are seen as useful in actions wherein insurance companies seek to have their liability declared." *Horace Mann Ins. Co. v. Johnson By & Through Johnson*, 953 F.2d 575, 579 (10th Cir. 1991) (quoting *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)). Indeed, the Tenth Circuit has "expressly recognized that one of the primary functions of the Act is to provide the [insurer] such a forum." *Id.* (quoting *Jones*, 570 F.2d at 1386); *see also Esurance Prop. & Cas. Ins. Co. v. Palm*, No. 20-cv-02170-PAB-STV, 2021 WL 4477686, at *6 (D. Colo. Sept. 30, 2021) (declining to dismiss a declaratory judgment claim under Rule 12(b)(6) "because the Tenth Circuit has explained that a 'declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the

9

Declaratory Judgment Act'" (quoting *W. Cas. & Sur. Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968)).

And when insurers sue other insurers to determine who has responsibility to provide the coverage at issue, it is common that both insurers file competing declaratory judgment claims. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 293–94 (10th Cir. 1975); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1338 (D. Colo. 2016), *aff'd* 734 F. App'x 586 (10th Cir. 2018); *North River Ins. Co. v. Am. Home Assurance Co.*, No. 01-cv-00231-WJ-ACT, 2003 WL 27385463, at *1 (D.N.M. Jan. 23, 2003). Even the Rutter Group Practice Guide section which NCC cites states that "[d]eclaratory relief is . . . proper in disputes between or among several insurers on the same risk (e.g., to determine which coverage is 'primary,' or which is obligated to furnish a defense, etc.)." Karen L. Stevenson & James E. Fitzgerald, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial National Edition* (May 2025 update) § 10:11.

NCC then argues that SRCS Capacity's Counterclaim is missing a key element of a claim for declaratory judgment, which is "the potential for future harm." [Doc. 32 at 6–9 (citing out-of-Circuit and out-of-District cases)].[3]  NCC explains that "both NCC's Complaint and SRCS Capacity's Counterclaim involve exclusively past conduct," that is, "defense costs already incurred defending a case for which there has already been a verdict." [*Id.* at 6].

---

[3] NCC also contends that the Counterclaim is "duplicative of SRCS Capacity's denials and affirmative defenses" and NCC's Complaint, *see* [Doc. 32 at 6], but this argument is more fleshed out in the section of NCC's Motion focused on redundancy. The Court will address this when addressing NCC's redundancy arguments.

The Court observes that NCC's position is irreconcilable with the fact that NCC itself is seeking declaratory relief regarding payments that it already made for an underlying lawsuit that has already been tried to a verdict.  More importantly, though, there *is* a potential for future harm here—that SRCS Capacity will have to expend additional resources to litigate this case if it cannot move for a quicker resolution through a declaratory judgment counterclaim, and that it may be sued again by NCC (if NCC chooses to dismiss this litigation) or otherwise by the other Defendants in this suit regarding its obligations to contribute to the defense in the Underlying Lawsuit.  *Cf. Cincinnati Specialty Underwriters Ins. Co. v. Emps. Mut. Cas. Co.*, No. 21-cv-02349-TC-ADM, 2022 WL 17093059, at *6 (D. Kan. Nov. 21, 2022) (finding that a declaratory action addresses "threatened future injury" where insurer is seeking a determination that "they are not liable for the damage award [defendant in underlying arbitration] (or its insurers) have already paid").  As SRCS Capacity points out, courts have allowed counterclaims for declaratory judgments for the "sound litigation reason[]" that "[a] plaintiff could decide to withdraw the original claim but the defendant might nonetheless want declaratory judgment of non-liability, to remove any uncertainty going forward regarding the parties' rights and duties."  [Doc. 33 at 5–6 (quoting *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-03012-WJM-NYW, 2016 WL 8416760, at *7 (D. Colo. July 13, 2016))].  The Court thus respectfully declines to dismiss the Counterclaim based on the argument that it fails to meet the requirements of the Declaratory Judgment Act.

B. **Redundancy**

Next NCC contends that SRCS Capacity's Counterclaim is redundant because it "will be rendered moot upon adjudication of NCC's Complaint or SRCS Capacity's

11

affirmative defenses." [Doc. 32 at 11]. NCC argues that SRCS Capacity's seeks the same relief as is sought by its Answer and affirmative defenses, which is "nothing more than the converse of the relief that NCC seeks." [*Id.*]. That is, NCC alleges that SRCS Capacity has a duty to provide a defense in the Underlying Lawsuit, and SRCS Capacity asks the Court to declare the opposite. [*Id.*] That position is also advanced in SRCS Capacity's Answer and affirmative defenses. [*Id.*]. In such situations, NCC argues, courts find that the counterclaims are duplicative, not useful, and improper. *See* [*id.* at 9–11].

SRCS Capacity responds with a few arguments. First, SRCS Capacity contends that its Counterclaim "provides additional factual context" and "correct[s] the record," which is "necessary for the Court to adjudicate this dispute early and as a matter of law." *See* [Doc. 33 at 6–9]. Second, SRCS Capacity disputes NCC's cited case law in support of its argument that duplicative claims should be dismissed, claiming that those cases only stand for the proposition that claims are dismissed only if they are duplicative of other claims brought by the same party. [*Id.* at 8–9]. Regardless, SRCS Capacity maintains that its Counterclaim is "not identical to any of its affirmative defenses." [*Id.* at 10–11]. SRCS Capacity further argues that even if a counterclaim is redundant, that does not require dismissal where the *Mhoon* factors do not weigh in favor of dismissal. [*Id.* at 10]. And here, SRCS Capacity argues, the *Mhoon* factors "are satisfied . . . without question." [*Id.* at 7–8].

Even though SRCS Capacity focuses its argument on any redundancy against its affirmative defenses, courts measure whether a counterclaim is redundant of a defendant's affirmative defenses *and* the plaintiff's affirmative causes of action. *Olave v. Am. Fam. Mut. Ins. Co., S.I.*, No. 21-cv-02908-CMA-NYW, 2022 WL 2817630, at *7 (D.

12

Colo. July 18, 2022), *recommendation adopted*, 2022 WL 3280156 (D. Colo. Aug. 11, 2022). Additionally, courts analyzing whether to dismiss a declaratory judgment on the grounds of redundancy "have done so both in the context of the *Mhoon* factors and without considering the *Mhoon* factors." *Id.* (citing *TBL Collectibles*, 285 F. Supp. 3d at 1196). NCC argues without support that the *Mhoon* factors "do not necessarily relate to redundant 'mirror image' counterclaims," but admits that they are relevant to the Court's decision in general whether to exercise its discretion to hear a declaratory judgment claim. [Doc. 34 at 6]. The Court finds that considering the *Mhoon* factors is helpful to its analysis because NCC's primary argument—that the Counterclaim is redundant and not useful—is itself one of the *Mhoon* factors.

        **1.**    ***Mhoon* Factors**

Both Parties agree that only the first two *Mhoon* factors are applicable here, i.e. (1) whether a declaratory action would settle the controversy, and (2) whether the claim would serve a useful purpose in clarifying the legal relations at issue. [Doc. 33 at 8; Doc. 34 at 6].

**Whether the Counterclaim Would Settle the Controversy.** SRCS Capacity argues that if the Court grants the relief requested in the counterclaim, "the controversy would be resolved in its entirety as between SRCS Capacity and NCC." [Doc. 33 at 8]. NCC does not directly dispute this and only addresses this argument to emphasizes that "it is NCC's declaratory judgment action that will [settle the controversy]." [Doc. 34 at 6–7].

The Court respectfully disagrees with SRCS Capacity. First, even if the Court granted all the relief requested in the Counterclaim, it would not resolve the entire dispute,

13

because NCC has also sued two other insurers who are not implicated by the Counterclaim. *See TBL Collectibles*, 285 F. Supp. 3d at 1196 (concluding that the first *Mhoon* factor weighs in favor of dismissing the counterclaim that "would not resolve the entirety of the dispute," even if it "would help to clarify the parties' legal relationship"). Second, even as to the dispute between NCC and SRCS Capacity, granting the requested relief would not necessarily resolve all the claims in NCC's Complaint. For instance, even if the Court declares that SRCS Capacity's policy with respect to the Property manager is excess to NCC's, [Doc. 25 at 23–24 ¶¶ 48–56], that would not resolve the question of whether SRCS Capacity breached that policy by not sharing in the defense of the Property manager, *see* [Doc. 1 at ¶¶ 38–42]; *see also Olave*, 2022 WL 2817630 at * 7 (finding that because the counterclaim was "not coextensive with [the plaintiffs]'s breach of contract claim," it would still leave a dispute over an element of the plaintiff's claim). Nor would it help answer the question of what costs (if any) SRCS Capacity, as the excess policy holder, is required to reimburse NCC for defending the Property manager. *See* [Doc. 1 at ¶¶ 34–36, 43–45]. And, of course, if the Court denies SRCS Capacity's counterclaim, NCC's claims in its Complaint are also not necessarily resolved.

**_Whether the Claim Would Serve a Useful Purpose in Clarifying the Legal Relationship between NCC and SRCS Capacity_**. NCC urges the Court to dismiss the Counterclaim because it "serve[s] no useful purpose," as it is duplicative of NCC's Complaint and SRCS Capacity's affirmative defenses. [Doc. 34 at 6–7; Doc. 32 at 9–11]. SRCS Capacity argues that its counterclaim is useful because it adds "factual and legal detail" to the dispute and "clarifies the muddied record created by NCC's complaint."

14

[Doc. 33 at 8–9]. The "factual and legal detail" that the Counterclaim adds, according to SRCS Capacity, is citing to the specific insurance policies at issues, bringing those policies documents and contracts into the record, and correcting NCC's factual misrepresentations. [*Id.* at 2–3, 6]. NCC responds that even if the Counterclaim does include additional facts and legal arguments, that is irrelevant and "not a justification for redundant counterclaims that serve no useful purpose." [Doc. 34 at 6–7].

As an initial matter, the Court is not persuaded by SRCS Capacity's reliance on *Skratch Labs LLC v. Delivery Native, Inc.,* No. 20-cv-01565-WJM-STV, 2021 WL 1406021 (D. Colo. Apr. 14, 2021), to support its proposition that adding "factual context" is a sufficient reason for a Court to exercise jurisdiction over a counterclaim.[4] [Doc. 33 at 6]. Here, SRCS Capacity contends that the primary purpose of its allegations is to "bring[] into the record the relevant insurance policies and other contracts and correspondence on which the dispute hinges." [*Id.* at 8]. But these documents are already referenced by NCC in its Complaint, and citations to specific language from such documents does not "enlarge the scope of the dispute." Further, while SRCS Capacity contends that its Counterclaim "correct[s] NCC's factual misrepresentations," the only such misrepresentation identified in the Opposition is NCC's allegation that SRCS Capacity never responded to NCC's tender. [*Id.* at 2]. SRCS Capacity does not argue that correcting this fact and alleging that SRCS Capacity did indeed respond to NCC's tender

---

[4] *Skratch Labs* is a trademark infringement case where the defendant counterclaimed for a declaratory judgment of non-infringement and added allegations regarding the scope of the marks at issue and explaining how its business is distinguishable from the plaintiff's. 2021 WL 1406021 at *1, *3. The court found that although the counterclaim "shares many features" of the plaintiff's claims, the defendant's new allegations "enlarge[d] the scope of the dispute beyond what Plaintiff has pled." *Id.* at *4.

15

affects the outcome of any of Plaintiff's claims, and the Court does not find that it does. *See* [Doc. 1 at ¶ 40 (an element of NCC's breach of contract claim is that SRCS Capacity "ha[s] not *accepted* the tender and [is] not sharing in the defense" (emphasis added))].

But despite the significant overlap,[5] there is not "complete identity of factual and legal issues between the complaint and counterclaim" to allow the Court to conclude at this juncture that the Counterclaim serves no useful purpose.  *See Clearwater Enters., L.L.C. v. Leggett & Platt, Inc.*, No. 5:23-cv-00046-R, 2023 WL 3397420, at *2 (W.D. Okla. May 11, 2023) (quotation omitted).  For instance, NCC's breach of contract claim may be decided without reaching the issue of duty, which is the specific issue that SRCS Capacity raises in its affirmative defense and Counterclaim.  The claim may be resolved based on one of the other elements of a breach of contract claim, such as causation or damages, not being proved.  Deciding the specific question of what duty, if any, SRCS Capacity owes to the defendants in the Underlying Lawsuit may "serve a useful purpose in clarifying the legal relations at issue."  *See Addison Ins. Co. v. Rippy*, No. 08-cv-00237-PAB-MJW, 2009 WL 723322, at *5 (D. Colo. Mar. 18, 2009) ("[B]ecause determining the duties of insurers represents an intended and important application of the Declaratory Judgment

---

[5] The Court agrees with NCC that there is significant overlap between the Counterclaim on the one hand and the affirmative claims and defenses on the other.  Count II of the Counterclaim requests a declaration that any defense obligation to the Property manager under the SRCS Capacity Policy is excess to NCC's duty to defend, [Doc. 25 at 23–24 ¶¶ 48–56]—an issue that will necessarily be fully resolved in the course of litigating NCC's claim that NCC's duty to defend is excess to SRCS Capacity's, *see* [Doc. 1 at ¶ 34–37]. And Count I of the Counterclaim requests a declaration that SRCS Capacity does not owe any duty to defend the Property owners with respect to the Underlying Lawsuit, [Doc. 25 at 21–23 ¶¶ 39–47]—a question that is covered by SRCS Capacity's second affirmative defense, *see* [*id.* at 9 (alleging that the Property owners and/or manager "do not qualify as insureds under the SRCS Capacity Policy")].

16

Act, adjudication by this Court of [insurer]'s claims would serve a useful purpose in clarifying the legal relations at issue in this case.").

In general, it is difficult to determine "whether a declaratory judgment counterclaim is in fact redundant prior to trial," which is why courts dismiss counterclaims "only when there is no doubt that they will be rendered moot by adjudication of the main action." *Am. Gen. Life Ins. v. Bagley*, 2:13-cv-00089-RJS, 2013 WL 5916824, at *5 (D. Utah Nov. 4, 2013) (quotation omitted). Even when there is an explicit finding that a counterclaim is redundant to affirmative defenses or claims brought in the complaint, courts in this District are reluctant to dismiss it at such an early stage of litigation. *See, e.g.*, *Olave*, 2022 WL 2817630, at *8; *Reddy v. Essentia Ins. Co.*, No. 21-cv-00433-RMR-MEH, 2021 WL 3742243, at *7 (D. Colo. Aug. 24, 2021), *recommendation adopted*, 2022 WL 2287536 (D. Colo. Feb. 18, 2022); *see also Skratch*, 2021 WL 1406021, at *4.

**Other Mhoon Factors.** Finally, the Parties' agreement that the last three *Mhoon* factors are not implicated here weighs against granting NCC's Motion. The third *Mhoon* factor allows courts to consider whether the defendant is engaging in "procedural fencing" or a "race to res judicata," and there is no argument or even indication that SRCS Capacity is trying to do that here. Taken together, the *Mhoon* factors do not weigh in favor of dismissal of SRCS Capacity's Counterclaim at this stage.

For the foregoing reasons, the Court declines to dismiss SRCS Capacity's Counterclaim for declaratory judgment under Rule 12(b)(6).

## II.     Rule 12(f)

NCC's argument for dismissal of SRCS Capacity's Counterclaim under Rule 12(f) is essentially the same as its redundancy argument—that "duplicative claims add no value

17

and should be stricken." *See* [Doc 32 at 11–14]. Other than the arguments already addressed in this Order, SRCS Capacity adds that Rule 12(f) motions to strike are usually only granted in this District under "rare circumstances" where "the movant can show that it has been prejudiced." [Doc. 33 at 11 (quoting *USI Ins. Servs., LLC v. Morris*, No. 22-cv-03180-GPG-MDB, 2024 WL 1436316, at *3 (D. Colo. Feb. 21, 2024), *recommendation adopted as modified*, 2024 WL 3085960 (D. Colo. Mar. 26, 2024))]. SRCS Capacity contends that NCC "does not even suggest that SRCS Capacity's counterclaim somehow results in prejudice to NCC," and either way, the fact that a counterclaim overlaps with the relief sought in a complaint does not on its own demonstrate prejudice. [*Id.* at 11–12 (quoting *Morris*, 2024 WL 1436316, at *10)]. In reply, NCC posits that the "the prejudice is self-evident" here, where "counterclaims are brought for no cognizable purpose beyond confusing the issues, expanding litigation, and needlessly complicating the proceedings." [Doc. 34 at 8].

Because NCC's statements are conclusory, with no explanation of how the Counterclaim would waste judicial resources, confuse the issues, or complicate the case, the Court finds that NCC has not met its "heavy" burden to establish prejudice here. *See Holzberlein*, 2008 WL 5381503, at *1. On the contrary, NCC has spent most of its briefing arguing that the Counterclaim is *duplicative* and seeks the *same redress* already sought by the Complaint. It follows, then, that the Counterclaim does not add much complexity or new issues to the case, and will not burden NCC by requiring significantly more discovery. Without prejudice, NCC fails to establish that the "drastic remedy" of striking the Counterclaim is appropriate. *See Griffie v. Allstate Fire & Cas. Ins. Co.*, No. 19-cv-02647-PAB-MEH, 2020 WL 4474800, at *3 (D. Colo. Aug. 3, 2020); *see also Bagley*,

2013 WL 5916824, at *5 (where there is some doubt about whether a counterclaim is redundant, courts deny motions to strike "if there is no discernible prejudice to the [p]laintiff").  The Court thus respectfully declines to strike SRCS Capacity's Counterclaim.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff National Casualty Company's Motion to Dismiss Counterclaim Pursuant to FRCP 12(b)(6) or 12(f), [Doc. 32], is **DENIED**.

DATED:  March 3, 2026                               BY THE COURT:

_____
Nina Y. Wang
United States District Judge